IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**JP MORGAN CHASE,**
**Employer Below, Petitioner**

**FILED**
**April 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-402**          (JCN: 2016001947)

**DONALD GWINN,**
**Claimant Below, Respondent**

**MEMORANDUM DECISION**

Petitioner JP Morgan Chase ("Chase") appeals the September 4, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Donald Gwinn filed a response.[1] Chase did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's orders, which denied examinations with Rajesh V. Patel, M.D., on January 4, 2021, June 21, 2021, August 30, 2021, October 27, 2021, October 31, 2022, and October 16, 2023; and denied an x-ray of the lumbar spine.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 16, 2015, while employed by Chase, Mr. Gwinn sustained occupational injuries to his left ankle, left knee, left hip, left arm, left-sided ribs, and head when he tripped and fell down some stairs. A lumbar spine x-ray was performed on July 22, 2015, revealing bilateral pars defects at L5 with grade 1 anterolisthesis of L5 on S1, and no fracture. The claim administrator issued an order dated July 28, 2015, holding the claim compensable for a left ankle sprain, left knee sprain, left hip sprain, left wrist sprain, unspecified head injury, and lumbar sprain/strain.

Mr. Gwinn underwent a lumbar spine MRI on August 20, 2015, revealing bilateral pars defects at L5 grade I anterior spondylolisthesis of L5 relative to S1; bilateral inferior neural frontal recess encroachment, and abutment of the exiting L5 nerve root bilaterally; desiccation of L4-L5 and L5-S1 disc; a broad-based disc displacement at L2-L3, but no

---

[1] Mr. Gwinn is represented Reginald D. Henry, Esq., and Lori J. Withrow, Esq. Chase is represented by Jane Ann Pancake, Esq., and Jeffrey B. Brannon, Esq.
.

evidence of additional disc herniation or central canal stenosis; and no evidence of marrow replacing process or macro fracture. On November 13, 2015, the claim administrator issued an order identifying the compensable diagnoses in this claim as a left ankle sprain, left knee sprain, left hip sprain, left wrist sprain, unspecified head injury, lumbar sprain/strain, and L5 radiculopathy.

On November 24, 2015, Mr. Gwinn underwent EMG/NCV testing revealing an abnormal study with electrophysiologic evidence for active S1 radiculopathy on the left; a deep lesion of the peroneal nerves bilaterally, which was noted to be common and clinically insignificant; and no evidence for peripheral polyneuropathy or lumbosacral radiculopathy on the right. Mr. Gwinn was evaluated by Brian Yee, M.D., on August 25, 2016, for complaints of low back pain that radiated down the left leg to his foot. Dr. Yee reviewed the MRI and EMG, and he assessed lumbar sprain, lumbar disc degeneration, lumbar spondylosis, and lumbar radiculopathy. Dr. Yee recommended a transforaminal epidural steroid injection on the left.

A lumbar MRI was performed on January 9, 2018. The impression was: 1. Bilateral L5 spondylolysis with 1 cm anterior spondylolisthesis of L5 on S1; 2. Bilateral foraminal encroachment at L5-S1 related to a multiplicity of factors; and 3. Mild bilateral inferior foraminal encroachment at L4-5 related to disc bulge and facet arthropathy.

Prasadarao Mukkamala, M.D., evaluated Mr. Gwinn on October 30, 2020. Dr. Mukkamala found that Mr. Gwinn had reached MMI from the lumbar sprain and did not require any further treatment other than a continuation of a home exercise program. Dr. Mukkamala opined that there was no indication for surgery.

On January 4, 2021, Mr. Gwinn was seen by Dr. Patel, and he reported that his condition in the low back was getting worse with time. Dr. Patel assessed spondylolisthesis L5-S1; lumbar sprain; neural foraminal narrowing bilateral L5-S1; spondylolysis bilateral L5; left L5 radiculopathy; and lumbar disc protrusion L5-S1.

Dr. Patel authored a letter dated June 28, 2021, in which he noted that Mr. Gwinn injured his lower back, left leg, and hip area at work on July 16, 2015, and had significant discomfort in his lower back, and his left leg. Dr. Patel noted that the lumbar MRIs showed bilateral pars defects, as well as spondylolisthesis L5-S1 with instability, and the EMG revealed an active radiculopathy of S1 on the left consistent with Mr. Gwinn's leg pain symptoms. Dr. Patel opined that the spondylolysis and spondylolisthesis were likely pre-existing, but the compensable injury caused them to become symptomatic. Dr. Patel recommended lumbar fusion at L5-S1 for the treatment of radiculopathy, which he opined was caused by the compensable injury. Dr. Patel explained that he initially recommended conservative treatment and an aggressive weight loss regimen. However, Dr. Patel opined that surgical intervention at this point was reasonable as Mr. Gwinn continued to have

2

severe limitations in his lower back, and left leg, which he had been having consistently since his compensable injury.

On September 22, 2021, ChuanFang Jin, M.D., evaluated Mr. Gwinn. Dr. Jin diagnosed status post fall with multiple sprains/strains involving several body parts, chronic low back pain with sprain/strain type injury of the lumbar spine superimposed on preexisting degenerative lumbar spine disease with preexisting spondylolisthesis at left L5 over S1; and left L5 radiculopathy, most likely from preexisting degenerative lumbar spine disease; and preexisting spondylolisthesis. Dr. Jin opined that from a medical perspective, the underlying pathology for radiculopathy and sciatica were preexisting and degenerative conditions, including spondylolisthesis. She further opined that the fall did not cause spondylolisthesis, although it could have triggered the radiculopathy symptoms. According to Dr. Jin, a one-time fall would not cause or accelerate the degenerative process or aggravate or alter the underlying pathologies. As such, she concluded that Mr. Gwinn's worsening symptoms were the direct result of the disease progression of preexisting conditions. Dr. Jin stated that the treatments requested by Dr. Patel, such as injections, physical therapy, and surgery, were for preexisting degenerative lumbar spine disease and spondylolisthesis and were not caused by or causally related to the compensable injury. Dr. Jin opined that it was reasonable to treat the radiculopathy symptoms but not the continuing progression of preexisting conditions that were not caused by the fall.

The Office of Judges issued a Decision dated June 1, 2022, which affirmed the Claim Administrator's Orders dated November 3, 2020, denying anterior spinal fusion at L5-S1, posterior lumbar fusion at L5-S1, laminotomy/laminectomy at L5-S1, outside foraminotomy at L5-S1, and posterior instrumentation at L5-S1; January 28, 2021, which denied temporary total disability benefits; and January 28, 2021, which denied physical therapy. The Board of Review issued an Order dated October 26, 2022, which affirmed the Office of Judges' Decision dated June 1, 2022. The Intermediate Court of Appeals issued a Memorandum Decision dated February 2, 2023, which affirmed the Board of Review's Order dated October 26, 2022.

Mr. Gwinn followed up with Dr. Patel on October 16, 2023. Mr. Gwinn reported that his lower back was essentially unchanged since the last visit; he had moderate to severe pain depending on activities and 50% was back pain with 50% leg pain. Dr. Patel stated that he believed epidural injections would help his radiculopathy and it should be authorized considering that radiculopathy was found to be compensable.

On January 9, 2024, the claim administrator issued an order that denied examinations with Dr. Patel on the following dates: January 4, 2021; June 21, 2021; August 30, 2021; October 27, 2021; October 31, 2022; and October 16, 2023; and denied an x-ray of the lumbar spine performed on October 31, 2022, on the basis that the treatment and

3

testing was not necessary treatment related to the approved diagnoses of lumbar sprain and lumbar spasm.

On September 4, 2024, the Board reversed the claim administrator's orders denying examinations with Dr. Patel on January 4, 2021, June 21, 2021, August 30, 2021, October 27, 2021, October 31, 2022, and October 16, 2023; and denying an x-ray of the lumbar spine. The Board found that Mr. Gwinn established that the treatment visits with Dr. Patel and a lumbar spine x-ray are medically related and reasonably required treatment for compensable conditions in the claim. Chase now appeals the Board's order.[2]

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

---

[2] In prior litigation in this claim, the Office of Judges, Board, and this Court had affirmed the claim administrator's orders that denied lumbar spinal fusion, physical therapy, and temporary total disability benefits. *See Gwinn v. JP Morgan Chase*, No. 23-172, 2024 WL 4767011 (W. Va. Nov. 13, 2024) (memorandum decision).

Subsequent to the filing of the instant appeal, on November 13, 2024, the Supreme Court of Appeals of West Virginia ("SCAWV") issued a memorandum decision reversing this Court's memorandum decision dated February 2, 2023, which affirmed the Board's decision. The SCAWV reversed and remanded the claim to the Board with directions to grant Mr. Gwinn's request for lumber anterior spinal fusion and physical therapy following the surgery, as well as temporary total disability benefits; and the January 28, 2021, decision, which denied physical therapy.

4

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

Chase argues that the scope of treatment allowed by the Code of State Rules § 85-20 (2006) ("Rule 20") for the compensable conditions has been exceeded in this case. Chase further argues that the conditions Dr. Patel is treating Mr. Gwinn for are noncompensable, thus, the visits should not be covered. We disagree.

The claim administrator must provide a claimant with medically related and reasonably necessary treatment for a compensable injury. *See* West Virginia Code § 23-4-3 (2005) and West Virginia Code of State Rules § 85-20 (2006).

Here, the Board determined that the medical evidence establishes that the requested office visits with Dr. Patel and x-ray of the lumbar spine are reasonable and necessary treatments for the compensable conditions. The Board noted that Dr. Patel has treated Mr. Gwinn for his back injury since at least January 4, 2021, at which time Dr. Patel noted that his condition in the low back was getting worse with time. The Board further noted that Dr. Patel's assessment of Mr. Gwinn included the compensable conditions of lumbar sprain and left L5 radiculopathy, and that Dr. Patel continued to treat Mr. Gwinn for the same diagnoses and lumbar symptoms through October 16, 2023, and specifically during the total of six office visits at issue over that period of time.

Much of Chase's argument is based on the theory that Dr. Patel is treating Mr. Gwinn for noncompensable conditions. Chase specifically argues that the surgery Dr. Patel requested is for a noncompensable condition, thus, the office visits are to treat noncompensable conditions. Given the SCAWV's November 13, 2024, memorandum decision in this claim holding that the spinal surgery recommended by Dr. Patel is reasonable and necessary treatment for the compensable conditions, we find no merit in this line of argument.

We also find no merit in Chase's argument that the scope of treatment allowed by Rule 20 has been exceeded in this case. C.S.R. §85-20-4.1 provides that "The provisions of this Rule are not intended to strictly dictate results, and it is recognized that there may be extraordinary cases that require treatments in addition to the treatments set forth in this Rule." Further, again, given the SCAWV's November 13, 2024, memorandum decision in this claim that found the spinal surgery recommended by Dr. Patel to be reasonable and necessary treatment for the compensable conditions, we conclude that the requested office visits with Dr. Patel and x-ray of the lumbar spine are also reasonable and necessary for treatment of the compensable conditions.

Upon review, we conclude that the Board was not clearly wrong in finding that the medical evidence establishes that the requested visits with Dr. Patel and a lumbar spine x-ray were medically related and reasonably required treatment for compensable conditions in the claim. As the SCAWV has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's orders denying examinations with Dr. Patel on January 4, 2021, June 21, 2021, August 30, 2021, October 27, 2021, October 31, 2022, and October 16, 2023; and denying an x-ray of the lumbar spine.

Accordingly, we affirm the Board's September 4, 2024, order.

Affirmed.

**ISSUED:** April 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

6